# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ANTHONY TAYLOR,                                  :

                Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant.          :

Case No. 3:07-cv-475

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on March 5, 2003, and an application for SSI on February 25, 2005, alleging disability from November 15, 2002, due to ankle and feet impairments and "hypercasliegtmroremia". (Tr. 55-57; 263-65; 78). Plaintiff's applications were denied initially and on reconsideration. (Tr. 35-36, 266, 272). Administrative Law Judge Melvin A. Padilla held a hearing, (Tr. 276-310), and determined that Plaintiff was disabled as of January 21, 2005, but not prior to that date. (Tr. 11-26). The Appeals Council denied Plaintiff's request for review. (Tr. 5-7).

Plaintiff filed an action in this Court seeking judicial review of the Commissioner's decision. *Taylor v. Commissioner of Social Security,* No. 3:06cv214 (filed July 17, 2006). Subsequently, the parties stipulated to a remand to determine whether Plaintiff was entitled to SSD and SSI for the period November 15, 2002, to January 21, 2005. *Id.* at Doc. 10, 12 and 13.

The Appeals Council remanded the matter with instructions to "update the record by requesting the treating and examining sources, including Drs. Koppenhoeffer, Danopulos, and Greer to provide additional evidence and further clarification of the opinions and medical source statements about what the claimant could do despite the impairments on or before January 21, 2005." (Tr. 347).

On remand, Judge Padilla held a hearing, (Tr. 375-95), and again determined Plaintiff was not disabled prior to January 21, 2005. (Tr. 322-33). The Appeals Council denied Plaintiff's request for review, (Tr. 311-14), and Judge Padilla's decision became the Commissioner's final decision.

4

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff meets the insured status requirements of the Act through December 31, 2008. (Tr. 327, ¶ 1). Judge Padilla also found that during the closed period, Plaintiff had severe residuals of remote injury and related surgery to each ankle, residuals of remote right knee injury and surgery, and a history of alcohol abuse and narcotic dependence, (*Id.*, ¶ 3), but that he did not have an impairment or combination of impairments that meet or equals the Listings. (Tr. 328 ¶ 4). Judge Padilla found further that during the closed period, Plaintiff had the residual functional capacity to perform a reduced range of light work. (Tr. 330 ¶ 5). Judge Padilla then used section 204.00 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and concluded that during the closed period, there was a significant number of jobs in the economy that Plaintiff was capable of performing. (Tr. 332). Judge Padilla concluded that Plaintiff was not disabled prior to January 21, 2005, and therefore not entitled to benefits under the Act prior to that date. *Id.*

Dr. Greer began treating Plaintiff for leg pain in September 2001. (Tr. 170). Dr. Greer prescribed medication and physical therapy and referred Plaintiff to an orthopedist, Dr. Forster. *Id.*

Consulting physician Dr. Forster reported on October 12, 2001, that Plaintiff complained of pain and stiffness in his ankles and feet, that Plaintiff reported that after he worked for an hour, he had swelling, pain, stiffness, and great difficulty walking, for which he used a cane. (Tr. 119-20). Dr. Forster also reported that examination revealed a 10-20 degree combined plantar and dorsiflexion of the left foot, no subtaler motion, and about 40 degree combined plantar flexion and dorsiflexion on the right. *Id.* Dr. Forster identified Plaintiff's diagnoses as post-traumatic arthritis in both ankles and feet and he suggested an ankle fusion. *Id.* Plaintiff wanted to avoid

surgery and instead was planning on seeking disability retirement which Dr. Forster noted, "seems entirely reasonable to me." *Id.*

Plaintiff underwent an initial physical therapy evaluation for posttraumatic arthritis and bilateral ankle pain on October 26, 2001. (Tr. 115-16). Plaintiff reported to the evaluator that his medical history included being involved in a car accident in 1972, in which he sustained a compound fracture of his left ankle, a soft tissue injury repair, another ankle injury from a second car accident in which he sustained multiple fractures of his foot and ankle, extensive reconstruction with skin grafts in the area of the foot and ankle, and an internal fixation. *Id.* Plaintiff also reported to the evaluator that his activity level dropped significantly after his second accident, but that he was still able to return to work. *Id.* Plaintiff reported further that he noted progressive stiffness and pain in both feet and ankles and rated his pain between a 4 and an 8 on a 10-point scale. *Id.* The physical therapy evaluator reported that Plaintiff ambulated with a stiff-legged gait, that his range of motion was decreased, his joint mobility was severely restricted on the right, rearfoot, and midfoot and minimally restricted in the forefoot, and that his right ankle rearfoot and midfoot were moderately restricted and minimally restricted in the forefoot. *Id.* The evaluator also reported that Plaintiff had a moderate amount of swelling of the medial and lateral aspects of the left ankle and that his right ankle showed extensive skin grafts which were restricted and adhered to underlying structures. *Id.* The evaluator identified Plaintiff's rehabilitation goals as improving range of motion and mobility and described Plaintiff's rehabilitation potential as fair. *Id.*

Dr. Greer treated plaintiff for complaints of a painful right shoulder on March 28, 2002. (Tr. 117). Dr. Greer noted that Plaintiff complained of difficulty using his arm above shoulder level and discomfort at night. *Id.* Dr. Greer also noted that Plaintiff had a full range of motion with

pain and positive impingement signs and that Plaintiff's right shoulder x-ray was normal. *Id.* Dr. Greer identified Plaintiff's diagnosis as rotator cuff tendinitis and possible chronic tear and he prescribed medication and physical therapy. *Id.*

On February 20, 2003, Dr. Greer reported that Plaintiff had post-traumatic arthritis of the bilateral ankles and feet and that his ranges of motion in his ankles were severely reduced. (Tr. 187-88).

Dr. Greer reported on May 2, 2003, that he began treating Plaintiff in September, 2001, that Plaintiff's ranges of motion were limited and that his ability to do movement with his feet was severely impaired. (Tr. 189-90).

Examining physician, Dr. Danopulos, noted on June 6, 2003, that Plaintiff was using two canes, and that Plaintiff reported that he needed them most in the mornings and after he sat for a long period of time. ( Tr. 124-33). Dr. Danopulos also noted that the canes were not obligatory "for short distance". *Id.* Dr. Danopulos reported that Plaintiff's mental status was normal, his right knee, right ankle, and left ankle showed reduced ranges of motion, his right knee and ankle were swollen, and that Plaintiff displayed an unsteady gait. *Id.* Dr. Danopulos also reported that Plaintiff's bilateral straight leg was normal, he was able to squat and arise from a squat, his thigh and calf measurements showed no atrophy, and his motor strength in the upper and lower extremities was normal. *Id.* Dr. Danopulos noted further that Plaintiff's right ankle was swollen and almost surgically fused, his left ankle was also surgically fused, and that neither ankle showed much motion. *Id.* X-rays of Plaintiff right knee performed in conjunction with Dr. Danopulos' examination showed spurring of the patella and lateral condylar area and arthritic changes. *Id*. Dr. Danopulos opined that the objective findings were right knee traumatic, restricted, and painful

motions with swelling, fused right ankle with swollen right foot, fused left ankle with chronic pain, and well-controlled hypertension. *Id.* Dr. Danopulos also opined that Plaintiff's ability to perform work-related activities was "restricted maximally"and he noted that Plaintiff's condition "does not give him the ability to walk properly." *Id.*

On August 4, 2003, Dr. Greer noted that Plaintiff could only walk one block before he needed to rest or he would experience severe pain, could sit for four hours in an eight-hour day, and stand/walk for less than two hours and for 15 minutes at a time, and that Plaintiff should walk for about five minutes every one and one-half hours. (Tr. 181-84). Dr. Greer opined that Plaintiff would need a job which allowed him to shift positions at will from sitting, standing, or walking and that he might need at least one unscheduled break during the day. *Id.* Dr. Greer also opined that when Plaintiff sat, he should keep his legs elevated for 80% of the workday, that Plaintiff could not lift more than 10 pounds occasionally or five pounds frequently, and that Plaintiff could not bend or twist at the waist. *Id.* Dr. Greer also opined that Plaintiff would be absent from work about twice a month as a result of his impairments or treatment. *Id.*

On August 20, 2003, Paula Beach, Plaintiff's occupational therapist, and Dr. Greer, completed an application for Plaintiff to receive a motorized wheelchair. (Tr. 177-80). Dr. Greer reported that Plaintiff used a cane or crutches with ambulation, but could do so only very slowly, that he had impaired sensation in both lower extremities, limited dorsiflexion of the left ankle, limited extension of both shoulders, had stiffness and edema of the lower extremities, and that he did not have adequate strength/endurance to propel a manual wheelchair. *Id.*

On November 4, 2003, Plaintiff underwent flexor tendon repair of two fingers after he sustained complete flexor tendon laceration and digital nerve laceration of the left index finger

8

while using a power saw on Halloween. (Tr. 139, 146). Following the procedure, his fingers were splinted and he was to follow up with physical therapy. (Tr. 140). A few weeks later, Plaintiff felt a "pop" in his finger, and Dr. Bamberger opined that he had ruptured his flexor tendon repair. (Tr. 144). Plaintiff underwent a second surgery to repair the tear. (Tr. 229).

Dr. Greer reported on August 30, 2004, that Plaintiff was post fractures bilateral ankles, had a rod in his right ankle, had traumatic DJD in both ankles with decreased range of motion and limited tolerance for standing and walking. (Tr. 170). Dr. Greer also reported that Plaintiff could not stand or walk for more than one-half hour at a time, had difficulty sitting in one position for an extended period of time, needed to change positions after one-half hour of sitting, could not lift more than 5 pounds, could not bend, stoop, or twist, and that he had limited use of his feet. *Id.* Dr. Greer opined that Plaintiff was unemployable and that Plaintiff would not experience significant improvement in his condition. *Id.*

On December 5, 2004, Plaintiff was seen in the ER for complaints of left hip pain. (Tr. 240-48). At the time, it was noted that Plaintiff was able to walk on his own, although he did so with a limping gait, his left hip showed some diffuse pain on palpation as well as on range of motion testing, but that Plaintiff had a full range of motion. *Id.* Plaintiff was treated and discharged. *Id.*

On January 4, 2005, Dr. Greer opined that Plaintiff had long-standing, progressive posttraumatic arthritis, which, by March 2003, had reached the point where Plaintiff was essentially disabled. (Tr. 209).

Examining physician, Dr. Koppenhoeffer, reported on January 21, 2005, that Plaintiff's gait was abnormal, he was unable to maintain a full stride length with either leg secondary

9

to his ankle contractures, his right knee was grossly unstable in all planes, and that there was a positive anterior drawer sign. (Tr. 198-208). Dr. Koppenhoeffer also reported that Plaintiff's right ankle was grossly deformed, there was a graft on his medial calf which measured seven inches, the medial aspect of his foot measured four inches, and that marked bony hypertrophy was noted involving the ankle itself. *Id.* Dr. Koppenhoeffer noted that motion involving Plaintiff's right ankle showed relatively severe contracture in plantar flexion, Plaintiff had an additional 10 degrees of movement of plantar flexion, inversion showed some movement, eversion was basically zero, and that Plaintiff's left ankle revealed marked bony hypertrophy and was basically fused in planar flexion. *Id.* Dr. Koppenhoeffer opined that Plaintiff's ankle deformities were probable severe arthritic changes related to his past trauma*,* his right knee would prevent him from doing any type of climbing activities or lifting activities, that Plaintiff would be unable to lift more than 10-20 pounds, stand for more than 10 minutes, and for only one to two hours during the entire workday, and that Plaintiff could sit for up to four hours during an eight hour workday. *Id.* Dr. Koppenhoeffer concluded that Plaintiff should never climb, balance, stoop, crouch, kneel, crawl, or work at heights, around moving machinery, or in temperature extremes but could perform unlimited manipulative functions. *Id.*

A medical advisor (MA) testified at the hearing that Plaintiff did not have an impairment that met or equaled the listings at any point throughout the record, that Plaintiff's previous testimony regarding his ability to perform daily activities was inconsistent with the level of functioning required by Listing 1.02A, and that Plaintiff's past history of alcohol abuse was a possible contributing factor to Plaintiff's functional abilities which could have impacted his ability to function. (Tr. 381-90). The MA further testified that Dr. Greer's opinion of disability was too

10

severe and not supported by the evidence. *Id.* The MA gave little weight to Dr. Danopulos' opinion that Plaintiff was restricted maximally because his opinion did not contain the standard terminology or parameters to describe residual functional capacity. *Id.*

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting treating physician Dr. Greer's and examining physician Dr. Danopulos' opinions and by failing to find that he (Plaintiff) was entirely credible. (Doc. 10).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had

11

a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

As noted above, the Commissioner previously determined that Plaintiff became disabled as of January 21, 2005, and he based that conclusion on Dr. Koppenhoeffer's findings and opinion.

Dr. Greer has been Plaintiff's long-term treating physician. *See, e.g.,* 171-97[1]. Over time, Dr. Greer has noted that Plaintiff has severely restricted use of his lower extremities, particularly his feet and ankles. Dr. Greer's opinion that Plaintiff is disabled is consistent, not only with his reported observations, but also with Dr. Forster's findings and conclusions, Dr. Danopulos'

---

[1] The Court notes that most of Dr. Greer's clinical records are illegible.

findings and opinion, and Dr. Koppenhoeffer's findings and opinion. As early as 2001, all of the physicians of record who have treated or examined Plaintiff have opined that Plaintiff's residual functional capacity is inconsistent with the ability to perform substantial gainful activity. In addition, Dr. Greer's opinion is consistent with and supported by the physical therapy evaluator's reported findings. The only evidence which opposes Dr. Greer's opinion, as well as Drs. Forster's, Danopulos', and Koppenfoeffer's opinions, are the opinions of the non-treating, non-examining MA and reviewing physicians.

Under these circumstances, the Commissioner erred by rejecting Dr. Greer's opinion that Plaintiff is disabled. The Commissioner's decision is therefore not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

The fourth sentence of 42 U.S.C. Sec. 405(g) directs the entry of a final appealable judgment even though that judgment may be accompanied by a remand order. *Sullivan v. Finkelstein,* 496 U.S. 617 (1990). The fourth sentence does not require the district court to choose

between entering final judgment and remanding; to the contrary, it specifically provides that a district court may enter judgment "with or without remanding the cause for rehearing." *Id.*

This Court concludes that all of the factual issues have been resolved and that the record adequately supports Plaintiff's entitlement to benefits for the period November 15, 2002, to January 21, 2005. Specifically, as noted above, all of the physicians who have treated or examined Plaintiff have essentially opined that he is disabled and the only evidence which arguably contradicts those opinions are the opinions from the non-treating, non-examining physicians.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled during the period November 15, 2002, to January 21, 2005, be reversed. It is also recommended that this matter be remanded to the Commissioner for the payment of benefits consistent with the Act.

November 19, 2008.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).